BRADLEY D. PACK, SBA #023973
**ENGELMAN BERGER, P.C.**
2800 NORTH CENTRAL AVENUE, SUITE 1200
PHOENIX, ARIZONA 85004
―――――――
Ph: (602) 271-9090
Fax: (602) 222-4999
Email: bdp@eblawyers.com
―――――――

CHRISTOPHER J. DAWES, ESQ.
HEATHER L. RIES, ESQ.
**FOX ROTHSCHILD LLP**
1225 17TH STREET, SUITE 2200
DENVER, CO 80202
―――――――
Ph: (303)383-7604
Fax: (303)292-1300
Email: CDawes@foxrothschild.com
Email: HRies@foxrothschild.com

Attorneys for BSV Lamont JCRS, LLC

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| In re:<br><br>SUMMIT FAMILY RESTAURANTS, INC.,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:21-bk-02477-BKM<br><br>**BSV LAMONT JCRS LLC'S OBJECTION TO DEBTOR'S SMALL BUSINESS DESIGNATION AND ELECTION TO PROCEED UNDER SUBCHAPTER V** |
|---|---|

To be eligible to file under Subchapter V of Chapter 11, the debtor must be "engaged in commercial or business activities." 11 U.S.C.A. § 1182(1)(A). "The plain meaning of 'engaged in' means to be actively and currently involved. In § 1182(1)(A) of the Bankruptcy Code, 'engaged in' is written not in the past or future but in the present tense." *In re Thurmon*, 625 B.R. 417, 422 (Bankr. W.D. Mo. 2020). Thus, if the debtor is not presently engaged in the operation of a business as of the date of its bankruptcy petition, it is not eligible to proceed under Subchapter V. *Id.* The Debtor has the burden of proving its eligibility for Subchapter V. *Id.* at 419 n.4 (Bankr. W.D. Mo. 2020); *see also In re County of Orange*, 183 B.R. 594, 599 (Bankr. C.D. Cal. 1995) (debtor has burden of proving eligibility to file under Chapter 9).

ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004

As of the Petition Date, and for over one year prior to the Petition Date, Summit Family Restaurants Inc. ("Debtor") had been fully closed. Accordingly, pursuant to Interim Federal Rule of Bankruptcy Procedure 1020(b), BSV Lamont JCRS LLC ("BSV" or the "Landlord"), objects to Debtor's designation of itself as a "debtor as defined in 11 U.S.C. § 1182(1)" and its election to proceed under Subchapter V. (Dkt. 1 at p.2). Debtor should not be permitted to continue on this path as a Subchapter V debtor and take advantage of Subchapter V's debtor-friendly provisions when, in fact, the Debtor is not statutorily eligible. This is particularly true in light of Debtor's inability propose and confirm a feasible Chapter 11 plan of reorganization.

In support of this Motion, the Landlord states as follows:

I.  **FACTS**

1. On April 6, 2021 (the "Petition Date"), the Debtor filed a voluntary chapter 11 petition, avowing that "The debtor is a debtor as defined in 11 U.S.C. § 1182(1)," and electing to proceed under Subchapter V of Chapter 11. (Dkt. 1, ¶ 8). Christopher C. Simpson was appointed as the Subchapter V trustee. (Dkt. 8).

2. On May 11, 2021, the U.S. Trustee conducted and concluded the 341 meeting of creditors in accordance with section 341 of the Bankruptcy Code (the "Section 341 Meeting").

3. As Debtor's principal acknowledged under oath, the Debtor shuttered the doors of its Casa Bonita restaurant on March 16, 2020. The revenues derived from Casa Bonita are Debtor's sole source of income. *See* Excerpted Transcript of Rule 2004 examination of Robert Wheaton attached hereto as **Exhibit "A**," at 27:4-6; Section 341 Meeting Transcript, attached hereto as **Exhibit "B**," at p. 5, ¶ 16-19.

4. The arcade, bar, and restaurant are currently not open for business and have not been open for business since the doors were closed in March of last year. Exh. A. at 11:1-22.

5. Further, as of the Petition Date *and* as of the date of Debtor's Rule 2004 examination last week on June 2, 2021, there has been $0.00 in revenue generated by the Debtor since April of 2020. Exh. A at 11:17-22.

6. Thus, as of the Petition Date, Debtor was not "engaged in" any commercial or

business activities, when for approximately one year prior to the Petition Date, the Debtor's doors were closed. At most, Debtor can rely on its assertion that the gift store opened for a few hours on Friday, May 28, 2021 in order to give some merchandise away. Exh. A at 10:13-11:1. The Debtor cannot cite to any other commercial or business activity to support that it was presently "engaged in" as of the Petition Date, when Mr. Wheaton admitted that the Debtor's only source of income is generated from the main restaurant and entertainment venue. Exh. B at p. 5, ¶ 16-19.

7. Debtor represented in its sworn Monthly Operating Report for April 2021 that it was operating. Debtor's disingenuous explanation for this misleading statement was:

Q. Now, this is for the period of April 7th to 30 of 2021; correct?

A. Yes.

Q. All right. Now, it's signed by Mr. Dowdy, but did you participate in this document's preparation?

A. Yes.

Q. All right. And we see a number of line items. Number 1 is: Did the business operate during the entire reporting period? And the answer checked is yes. How was it that the business was operating during the reporting period?

A. We still have obligations, utilities. We provided to you pro formas, so, you know, the -- not pro formas. Actuals. That's one of the questions asked in the delivery. We generated monthly P&Ls, so obviously -- we've interpreted line 1 to mean, provide on an accurate basis exactly what the P&L would look like for that entire period.

**Q. Was the debtor open for business during the reporting period?**

**A. It was not.** But I don't read that interpretation as what number line 1 says.

Exh. A at 65:3-24 (emphasis added).

8. Debtor's bankruptcy schedules reflect that it had $984,977.66 in cash or cash equivalent on the Petition Date. (Dkt. 5). However, this entire amount is from a Paycheck Protection Program (PPP) loan, "other than maybe pennies." Exh. B at p. 21-22, ¶¶ 1-13 and 24-28. Debtor acknowledges that there are limitations on how it can spend the PPP loan proceeds, and intends to apply for full loan forgiveness. *See* Exh. A at 68:8-13, Exh. B at p. 22,

¶ 8-13. Based on the limitations imposed on utilization of PPP proceeds, those funds are not available to fully cure the defaults under Debtor's lease of its business premises from Landlord (the "Lease").

9. Debtor was also denied financing and believes that it has "exhausted any sources in the short run to secure financing." *See* Exh. A at 17:1-21; *see also* Exh. A at 20: 8-24 (highlighting the unsuccessful pursuit of financing options). Notably, Debtor's representative and CEO, Mr. Wheaton, made clear that potential lenders requested guaranties of him in connection with financing, which he refused to provide. *See* Exh. A at 20:20-24.

10. Debtor contends that it intends to cure the Lease over time using income from operations of the Debtor. Exh. A at 30:9-11 (Debtor intends to cure default "over a reasonable period of time the debtor intends to pay from proceeds of operations."). There are presently no such operations.

11. Pursuant to 11 U.S.C. § 365(d)(4)(A), Debtor has through August 4, 2021 within which to assume or reject the lease of its business premises from Landlord (the "Lease"). Non-existent operations will not fund such a cure.

## II. Debtor Is Not Eligible to Elect Subchapter V Status.

The SBRA was designed to streamline the reorganization of small businesses by creating a new Subchapter V to Chapter 11 of the Bankruptcy Code. Subchapter V is a debtor friendly avenue and simplifies some of the procedural requirements that standard chapter 11 debtors must adhere to. However, it is available only to eligible debtors.

When the SBRA was enacted in 2019, section 1182(1) stated, "The term 'debtor' means a small business debtor." *See* 11 U.S.C. § 1182(1). Under the Bankruptcy Code, a "small business debtor" is defined as "a person engaged in commercial or business activities … that has aggregate noncontingent liquidated secured and unsecured debts as of the date of filing of the petition … [of] not more than $2,725,625 … not less than 50% which arose from the commercial or business activities of the debtor." *See* 11 U.S.C. § 101(51D).

Reacting to the Coronavirus pandemic, Congress signed the "Coronavirus Aid, Relief,

and Economic Security Act" (the "CARES Act") into law on March 27, 2020. The CARES Act amended the existing definition of "debtor" under section 1182(1) of the SBRA to read:

> The term 'debtor' –
>
> (A) … means a person **engaged in commercial or business activities** … that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition … in an amount not more than $7,500,000 … not less than 50 percent of which arose from the commercial or business activities of the debtor …

11 U.S.C. § 1182(1)(A) (emphasis added).[1]

The Debtor has the burden of proving its eligibility for Subchapter V. *In re Thurmon*, 625 B.R. at 419 n. 4; *see also In re County of Orange*, 183 B.R. at 599.

Interim Federal Rule of Bankruptcy Procedure 1020 permits the U.S. Trustee and other parties-in-interest to object to a debtor's Subchapter V election, provided they make the objection "no later than 30 days after the conclusion of the meeting of creditors held under § 341(a) of the Code, or within 30 days after any amendment to the statement, whichever is later."[2] In this case, the 341 Meeting was held on May 11, 2021, which makes the deadline to file this objection June 10, 2021. Therefore, this Objection is timely.

Debtor is not eligibile to proceed under Subchapter V because it was not **engaged** in any commercial or business activities as of the Petition Date. While the Bankruptcy Code does not expressly defined in the term "engaged in," it is well-settled that "when Congress does not define a term, we rely on the word or phrase's plain meaning or common understanding. The plain meaning of 'engaged in' means to be actively and currently involved in. In § 1182(1)(A) of the Bankruptcy Code, 'engaged in' is written not in the past or future but in the present tense." *In re Thurmon*, 625 B.R. at 422.

---

[1] The CARES Act increased the debt limit from $2,725,625 to $7,500,000. The rest of the definition of small business debtor in the CARES Act mirrors the definition in Bankruptcy Code section 101(51D) as detailed above.

[2] *The Interim Federal Rule of Bankruptcy Procedure 1020 was adopted by this Court on January 16, 2020, effective February 19, 2020. See General Procedure Order 20-1. This Court also adopted the Amended Interim Bankruptcy Rule 1020 effective immediately on April 21, 2020. See General Procedure Order 20-6.* .

ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004

The Bankruptcy Code uses the phrase "engaged in" in a few different areas, and it is presumed that "identical words in the same statute carry the same meaning." *See Henson v. Santander Consumer USA*, 137 S.Ct. 1718, 1720 (2017). For example, § 101(18)(A) requires a "family farmer" to be "engaged in a farming operation." Similarly, a "health care provider" under § 101(27A)(A) must be "primarily engaged" in offering certain facilities and services. And, § 101(44) defines a railroad to include a common carrier "engaged in the transportation of individuals or property." *See In re Thurmon* 625 B.R. at 421. Cases interpreting these statutory terms have consistently held that Congress meant "engaged in" to have a present tense definition. *Id.* at 421-22, nn.14-16 (citing cases).

In *Thurmon,* the debtors had previously operated two pharmacies through their limited liability company, which had ceased operating about three months before the Debtors filed their bankruptcy petition. As of the petition date, the LLC had no employees, no customers, and no vendors. Nonetheless, the debtors "elected to file chapter 11 as subchapter V small business debtors by so designating on their petition." *Id.* at 420. The court sustained the U.S. Trustee's objection to the debtor's Subchapter V election. In doing so, the court noted that ***"if Congress had intended to make all debtors with business debts below the debt cap eligible for subchapter V small business relief regardless of whether the business was still operating, it could have done so."*** *Id.* at 423 (emphasis added). However, interpreting § 1182(a)(1) to permit a debtor that is not presently engaged in the operation of a business to elect to proceed under Subchapter V "render the phrase 'engaged in commercial or business activities' superfluous." *Id.*

The fact that Congress purposefully included the "engaged in" language in the definition of small business debtor, is even more reason that the Debtor should be held to the statutory standards of subchapter V. The Debtor was not and is still not "engaged in" any commercial or business activities that would come close to meeting the requirements of subchapter V. Accordingly, the Court should not allow Debtor to proceed under Subchapter V.

Even if Debtor's petition has been designated properly, however, this chapter 11 case is

likely subject to dismissal for cause under 11 U.S.C. § 1112(b) due to, among other things, "substantial and continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Debtor's inability to effectuate a chapter 11 plan alone constitutes "cause" for dismissal. *In re 3 RAM, Inc.*, 343 B.R. 113, 117 n.14 (Bankr. E.D. Pa. 2006) (the inability to effectuate a chapter 11 plan constitutes independent "cause" for dismissal); *Matter of Elmwood Development Co.*, 964 F.2d 508, 513 (5th Cir. 1992) (noting that the debtor in this case had neither the "purpose nor the ability to effectuate a reorganization plan" and ultimately upholding the dismissal of a chapter 11 petition). There is no "reasonable likelihood" of reorganization for a Debtor that continues to operate with no revenue and for a Debtor whose business plan is to use PPP funds to repay creditors, but also expend the PPP funds in a manner that would permit full loan forgiveness from the SBA. Exh. A at 68: 8-13.

## III. CONCLUSION

Landlord respectfully requests that this Court enter an order sustaining its objection to the Debtor's small business designation and election to proceed under Subchapter V and granting such other and further relief as may be appropriate.

DATED this 10th day of June 2021.

ENGELMAN BERGER, P.C.

By  /s/ Bradley D. Pack, SBA #023973
 Bradley D. Pack
 Attorneys for BSV Lamont JCRS, LLC

COPY of the foregoing was transmitted
by ECF system and e-mailed
this 10th day of June 2021 to:

Philip R. Rudd (Rudd@sackstierney.com)
Wesley Denton Ray (Ray@sackstierney.com)
Sierra M. Minder (Sierra.Minder@sackstierney.com)
Sacks Tierney
Attorneys for Debtor

Christopher Simpson (csimpson@omlaw.com)

1  Osborn Maledon, P.A.
   Subchapter V Trustee
2
   Patty Chan (patty.chan@usdoj.gov)
3  Office of the U.S. Trustee

4  Lamar Hawkins (lamar@guidant.law)
   Attorneys for Save Casa Bonita, LLC
5

6
    /s/ Paul A. Manley
7

ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004